UNITED STATES DISTRICT COURT
FOR THE DISCTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | ) No. CR22-205-TJK |
|---|---|
| Plaintiff, | ) |
| v. | ) DEFENDANT'S SENTENCING MEMORANDUM |
| BRIAN RAYMOND JONES, | ) |
| Defendant. | ) |

    Brian Raymond Jones, through Assistant Federal Public Defender Gregory Geist, submits this memorandum in support of sentencing scheduled for May 9, 2023, at 2:00 p.m. Mr. Jones joins the Probation Office's recommendation that he receive no additional time in custody. He requests that the Court impose 12 months of supervision because it reflects a sentence that is not greater than necessary when considering the seriousness of Mr. Jones's offense, just punishment, deterrence, protection of the public from further crimes of Mr. Jones, and treatment in the most effective manner. 18 U.S.C. § 3553(a); PSR at ¶ 81.

### I.  MR. JONES ACKNOWLEDGED HE COMMITTED A CRIME AND IS ASHAMED OF HIS PARTICIPATION ON JANUARY 6.

    As much as Mr. Jones is embarrassed by his participation on January 6 and vows never "to attend any kind of political event or rally or protest ever again," he entered a guilty plea because he recognized he broke the law. In retrospect, there were too many warning signs—the overwhelmingly large crowd, the alarm, and the lack of security screening, among others—for Mr. Jones to ignore. Now, Mr. Jones hopes "that people will look at this January 6th tragedy and be dissuaded to go into Capitol buildings."

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Ex. 1 (Brian Jones's letter). In hindsight, Mr. Jones wishes he "had just stayed home and watched [Trump's rally] on TV." *Id*.

But it is also important to review the nature and circumstances of Mr. Jones's offense on January 6 relative to others. Ex. 2 (video stills, filed separately under seal). Mr. Jones is a follower, not a leader. He traveled to Washington, D.C. "to go to a Trump rally, not an insurrection." PSR at ¶ 30. Mr. Jones attended the rally and then trailed the crowd to the Capitol because he thought there would be guest speakers there. He walked with the crowd up the stairs and into the Capitol. Unfortunately, he "didn't realize the bigger picture of what was happening in the moment" and if he "knew there were people being hurt [he] would have stayed far away." Ex. 1.

Mr. Jones did not witness violence, but he knows that others committed violent acts. He did not yell or chant, and he did not taunt any police officers. Mr. Jones was a participant, but his actions can be described as passive. For example, he often stood in the background and away from large groups inside the Capitol. He did not damage or steal anything from the Capitol. About five minutes after he entered the Capitol, Mr. Jones is seen on video picking up a rope barrier and metal post that someone else knocked down in front of him. Sealed Ex. 2 at 5–12. Later, he leans against a wall near a window for about nine minutes. *Id.* at 31–32.

About 22 minutes after first entering the Capitol, at 2:43 p.m., Mr. Jones attempts to exit but is unable to find a way around a large group of people at a doorway. *Id.* at 45–69. Mr. Jones, at 5'6" tall, could not see what was happening outside the crowded doorway at 2:46 p.m. *Id.* at 67. Coincidentally, as Mr. Jones attempted to exit, he sees Mr. King, the co-defendant, enter the Capitol. *Id.* at 69. Mr. Jones remains in the Capitol for less than two minutes before he decides to try exiting again at 2:47 p.m. *Id.* at 85. After waiting behind a crowd of people, Mr. Jones is eventually able to exit the Capitol at 2:52 p.m. *Id.* at 89.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Jones sought to educate himself about the events from January 6. That education commenced when he turned on the television in his hotel room, on January 6, and "saw all the violence and chaos." Ex. 1. Additionally, Mr. Jones watched a number of the public hearings of the United States House Select Committee on the January 6 Attack.

Mr. Jones was particularly moved by the testimony from Metropolitan Police Officer Michael Fanone.[1] A mob attacked and assaulted Officer Fanone. As a result, Officer Fanone suffered a heart attack and was later diagnosed with a concussion, a traumatic brain injury, and PTSD. Mr. Jones knows that many officers, like Officer Fanone, were injured, traumatized, or died as a result of the attack. Mr. Jones acknowledges that his remorse and shame for participating on January 6 will never measure up to the pain and suffering of those who sought to protect lives and property.

Mr. Jones is specifically deterred from committing further crimes, and the need to protect the public from his further crimes is minimal at best. He recognizes that he committed a crime and wants to obey the law in the future. His time on pretrial release, since March 23, 2022, demonstrates he will follow the terms of probation. Mr. Jones is employed and is seeking a better job in the future. Mr. Jones also hopes that his experience will dissuade others from engaging in violence or crime and from entering Capitol buildings. Ex. 1.

## II. THE PRIOR MISDEMEANOR CONVICTIONS (PSR AT ¶¶ 36–38) MUST BE CONSIDERED IN CONTEXT (PSR ¶ 42).

In the event the government uses the three protection-order convictions (PSR at ¶¶ 36–38) to justify a prison sentence for the instant conviction, the circumstances of

---

[1] DC Police Officer Michael Fanone Full Opening Statement on January 6th Attack, https://www.bing.com/videos/search?q=officer+fanone+testimony+c+span&view=detail&mid=6060EFE77475CA4816316060EFE77475CA481631&FORM=VIRE (last visited May 4, 2023).

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

three convictions must be considered. The conduct that comprised the protection-order convictions occurred over ten years ago, and each were fixed to an assault that Mr. Jones did not commit.

According to a police report, officers were dispatched to a reported incident with a window punched out on October 20, 2012. Mr. Jones told officers that his friend, W.S.,[2] broke the window after W.S. and Mr. Jones's girlfriend, C.T., got in an argument. Separately, C.T. told officers that no one hit her and W.S. broke her window. Mr. Jones agreed that no one hit C.T. Rather than contact W.S., officers talked to a four-year-old child and, based on that conversation, arrested Mr. Jones for an assault and obtained a protection order.

C.T. repeatedly requested the court to rescind the protection order. She went to the courthouse on October 23, 2012 to rescind the order. On October 25, she filed a motion to rescind the order. According to the docket, on October 31, she told the court to rescind the order because the charge was not true:

```
VICTIM REASON FOR MOTION IS THAT IT'S NOT TRUE.
```

On January 9, 2013, the prosecutor moved to dismiss the assault charge with an explanation. The court granted the motion and terminated the no contact order.

Unfortunately, Mr. Jones had contact with C.T. before the court terminated the no contact order. He was charged with three no contact order violations. C.T. sought to have the protection orders rescinded on January 11, 2013 and again on February 6. A February 6 docket entry for the protection order offense (PSR at ¶ 36) indicated that C.T. "wanted this whole thing to be dropped to [begin] with" and another party provided a statement of breaking the window:

---

[2] Undersigned counsel is using initials rather than a full name, but both Mr. Jones and C.T. provided the full name for W.S.

DEFENDANT'S SENTENCING MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

```
INFORM ANOTHER PARTY PROVIDED STATEMENT OF BREAKING OF
WINDOW.
-
```

On February 6, the judge allowed contact between Mr. Jones and C.T. "but unrestricted contact is not permitted."

Again, C.T. moved to rescind the no contact order on March 19 and July 19. For the offense listed in Paragraph 37 of the PSR, the court modified the protection order on May 8, 2013 and allowed Mr. Jones and C.T. to have direct contact. On July 31, the judge granted the motion to rescind the protection order.

Finally, Mr. Jones was charged for having contact with C.T. at a park on March 23, 2013. PSR at ¶ 37. Officers found Mr. Jones and C.T. seated at a picnic table. It does not appear the court issued a protection order, either during the pendency of the case or after sentencing. At the time Mr. Jones was sentenced on October 21, 2013,[3] to 75 days in custody, he had been allowed to have unrestricted contact with C.T. since July 31.

Mr. Jones does not deny he committed the protection order violations. He pled guilty and received time in jail for three offenses. But he did not commit an assault or break a window that caused the issuance of the protection orders in the first place. He received arguably excessive sentences for the protection order violations. These excessive sentences from about a decade ago should not serve as a basis for sentencing Mr. Jones to prison, now, for his conduct on January 6, 2021.

---

[3] The PSR lists a sentence date of September 23, 2013, but that is the date Mr. Jones pled guilty. The court sentenced Mr. Jones on October 21.

DEFENDANT'S SENTENCING
MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## III. CONCLUSION

For the above stated reasons, as well as the reasons stated by Probation in the sentencing recommendation, Mr. Jones requests a sentence that does not include additional jail time.

DATED this 4th day of May 2023.

> Respectfully submitted,
>
> s/ *Gregory Geist*
> Assistant Federal Public Defender
> Attorney for Brian Raymond Jones

DEFENDANT'S SENTENCING
MEMORANDUM
(*U.S. v. Jones*, CR22-205-TJK) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**